IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:24-CV-545-FL

| | |
|---|---|
| THEODORE TANSILL, | )<br>) |
| Plaintiff, | )<br>) |
| v. | )      ORDER<br>) |
| ASTRAZENECA PHARMACEUTICALS, LP, | )<br>)<br>) |
| Defendant. | ) |

This matter is before the court upon partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed November 25, 2024, by defendant Astrazeneca Pharmaceuticals, LP ("Astrazeneca"). (DE 10). The issues raised have been briefed fully and are ripe for ruling. For the following reasons, the motion is denied.

### STATEMENT OF THE CASE

Plaintiff commenced this employment discrimination action September 20, 2024, asserting two claims of religious discrimination—failure to accommodate and disparate treatment—under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and one claim of wrongful discharge under the North Carolina Equal Employment Practices Act ("NCEEPA"), N.C. Gen. Stat. § 143-422.2. He seeks declaratory relief, damages, costs, and injunctive relief.

Defendant filed the instant motion November 25, 2024, seeking to dismiss plaintiff's disparate treatment and wrongful discharge claims, relying upon a "Vaccination Communication," and a "Religious Reasonable Accommodation Request Form" ("Request Form"). Plaintiff

responded in opposition December 16, 2024, and defendant replied. Discovery regarding plaintiff's failure to accommodate claim is ongoing pursuant to the court's February 10, 2025, case management order (DE 20).

## STATEMENT OF FACTS

The facts alleged in the complaint may be summarized as follows.

Plaintiff began working for defendant in 2016, initially as a contractor and later as a "hybrid cloud architect." (Compl. (DE 1) ¶ 1). In 2018, plaintiff became "a 100% remote employee" and completed all essential job duties from his home. (Id. ¶ 2).

Defendant adopted a COVID-19 vaccination requirement for all employees in January 2022, allowing employees until February 28, 2022, to request religious or medical exemption. (Id. ¶ 26). Plaintiff submitted a request for religious exemption February 24, 2022, "explain[ing] that he has a personal relationship with God that he fosters through prayer and examining scripture to guide his decision making." (Id. ¶ 45). After examining scriptures and praying, plaintiff "came under strong religious conviction that he must not receive a COVID-19 vaccine." (Id. ¶ 48). Plaintiff also "believes that the Christian Church has condemned abortion," and due to his "understanding that the COVID-19 vaccines were developed or tested using cell lines that were generated or derived from tissues of aborted fetuses," cooperation in such acts would cause him to "be held morally accountable by God." (Id. ¶¶ 53-55). Finally, plaintiff "believes that he cannot take the chance of genetically altering his body because it was created by Creator God in His image," and that "preemptively tinkering with his God-given immune system [would show] a lack of faith in God." (Id. ¶ 56).

In email sent March 31, 2022, defendant determined plaintiff "was not qualified for a reasonable accommodation." (Id. ¶ 67). Subsequently, defendant terminated plaintiff "for

2

upholding what [defendant] deemed were not sincerely held religious beliefs in conflict with receipt of a COVID-19 vaccine." (Id. ¶ 61). According to plaintiff, "[d]efendant treated secular employees, with medical conflicts with the [vaccination requirement], more favorably than similarly situated employees, religious employees with a religious conflict with the [vaccination requirement]." (Id. ¶ 133). Plaintiff further alleges defendant "did in fact provide religious accommodations at higher rates to employees belonging to religious belief systems that differed from [plaintiff's] disfavored religious beliefs." (Id. ¶ 138). However, plaintiff also states that defendant "granted religious accommodations with [sic] employees who submitted virtually identical religious accommodation requests." (Id. ¶ 66).

## DISCUSSION

A.  Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, ... bare assertions devoid of further factual enhancement[,] ... unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).[1]

---

[1] In case citations in this order, internal quotations and citations are omitted, unless otherwise specified.

B.     Analysis

   1.     Disparate Treatment (Count Two)

Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's religion." 42 U.S.C. § 2000e-2. "Religion" is defined to include "all aspects of religious observance and practice, as well as belief." Id. § 2000e(j). "To prove a Title VII claim under a disparate treatment theory, a plaintiff must demonstrate that the employer treated [him] differently than other employees because of [his] religious beliefs." Barnett v. Inova Health Care Servs., 125 F.4th 465, 471 (4th Cir. 2025) (emphasis in original). Complaints in such actions "are not subject to a heightened pleading standard and need only satisfy the simple notice pleading requirements of [the] Federal Rules of Civil Procedure." Id. "Therefore, a plaintiff need only plead facts supporting a reasonable inference of discriminatory intent." Id. Defendant argues plaintiff has not plausibly alleged that he was treated differently from similar employees who do not share his religious beliefs. The court disagrees.

In Barnett, another case about a workplace COVID-19 vaccination requirement, the court determined that an employee "sufficiently alleged facts supporting a reasonable inference of discriminatory intent" where the complaint included allegations that her employer: 1) decided to grant vaccine exemptions based on whether it "found an employee's religious beliefs were legitimate"; 2) "created specific questions . . . [to] scrutinize and determine, in its view, the validity of an employee's religious beliefs"; 3) "chose to exempt employees who came from more prominent religions or held to more conventional beliefs"; and 4) "found certain religious beliefs as sufficiently acceptable to qualify for a [vaccination] exemption, while rejecting others." Id. at 472. The court concluded that such allegations "sufficiently demonstrate that [the employer]

4

treated [the employee] differently than other employees because of her religious belief, and thus, support a reasonable inference of discriminatory intent" at the motion to dismiss stage. Id.

The allegations here mirror those in Barnett. Plaintiff alleges that defendant "determined that [plaintiff's] interpretation of the scriptures and his reliance on his prayers were not sincere, and were not based on a belief that was religious in nature." (Compl. (DE 1) ¶ 90). Additionally, the questionnaire included in the Request Form posed specific questions such as "How long have you held the religious belief underlying your objection?", "What is the name of your religion and are you a member of a place of worship?", "Please explain how the religious belief that prevents you from receiving the COVID-19 vaccine affects other areas of your life"; and "Have you ever requested a religious accommodation previously?" (Id. ¶ 64; Request Form (DE 11-2) at 1, 2). Plaintiff also alleges that defendant "provide[d] religious accommodations at higher rates to employees belonging to religious belief systems that differed from [plaintiff's] disfavored religious beliefs." (Compl. (DE 1) ¶ 138). Construed in the light most favorable to plaintiff and as in Barnett, these allegations "support a reasonable inference of discriminatory intent." 125 F.4th at 472.

Defendant's argument that plaintiff's contradictory allegations are fatal to his claim is unpersuasive. A party may "plead[] multiple or alternative claims based on the same facts." Feminist Majority Found. v. Hurley, 911 F.3d 674, 696 (4th Cir. 2018); see also Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). Therefore, plaintiff's allegation that defendant "granted religious accommodations [to] employees who submitted virtually identical religious accommodation requests," (Compl. (DE 1) ¶ 67) does not negate his further allegations that defendant "treated secular employees . . . more favorably than similarly situated employees," (id. ¶ 133), and "provide[d] religious

5

accommodations at higher rates to employees belonging to religious belief systems that differed from [plaintiff's] disfavored religious beliefs," (id. ¶ 138). To state a claim for disparate treatment, plaintiff is not required to allege that all employees with his religious beliefs were discriminated against, only that he was. See Barnett, 125 F.4th at 471. Plaintiff here has done so.

In sum, plaintiff has alleged sufficient facts to support a disparate treatment claim. Therefore, that portion of defendant's motion which seeks dismissal of plaintiff's disparate treatment claim is denied.

2.  Wrongful Discharge (Count Three)

The NCEEPA provides "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees." N.C. Gen. Stat. § 143-422.2(a). "The North Carolina Supreme Court has explicitly adopted the Title VII evidentiary standards in evaluating a state claim under § 143–422.2 insofar as they do not conflict with North Carolina statutes and case law." Hughes v. Bledsoe, 48 F.3d 1376, 1383 (4th Cir. 1995) (citing N.C. Dep't of Correction v. Gibson, 308 N.C. 131, 136 (1983)). However, North Carolina courts have "held that N.C. Gen. Stat. § 143-422.2 does not impose a corresponding duty of reasonable accommodation by an employer." Head v. Adams Farm Living, Inc., 242 N.C. App. 546, 553 (2015).

Where plaintiff has alleged sufficient facts to support a claim of disparate treatment under Title VII, he has also stated a claim of wrongful discharge under the NCEEPA. See Hughes, 48 F.3d at 1383. Therefore, that portion of defendant's motion which seeks dismissal of plaintiff's wrongful discharge claim is denied.

6

## CONCLUSION

Based on the foregoing, defendant's partial motion to dismiss (DE 10) is DENIED. Pursuant to Fed. R. Civ. P. 12(a)(4)(A), defendant shall file responsive pleading within 14 days from date of entry of this order. Deadline in the case management order (DE 20) for the parties' provision to the court of their supplemental report now is triggered. If the parties wish to pursue mediation, as made mention of in their joint report (DE 19), and would seek some stay of case activities to further their mediation efforts, such request may be made in that report also due 14 days from date of entry of this order.

SO ORDERED, this the 17th day of March, 2025.

_____
LOUISE W. FLANAGAN
United States District Judge